1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10  FRANCIS W. DAVIS, | Case No. 1:09-cv-01897-AWI-SKO (PC) |
| 11          Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING PLAINTIFF'S MOTION |
| 12      v. | FOR SUMMARY JUDGMENT BE DENIED AND DEFENDANT'S MOTION FOR |
| 13  T. VILLAGRANA, | SUMMARY JUDGMENT BE GRANTED |
| 14          Defendant. | (Docs. 53 and 59) |
| 15 | OBJECTION DEADLINE: TWENTY DAYS |
| 16  _____/ | |

17

## I.    Procedural History

18
19
20
21
22
23
24
25
26

Plaintiff Francis W. Davis, a former state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 29, 2009.  The events at issue in this action occurred at the California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California in 2008.  At the time, Plaintiff was an inmate worker at the SATF peanut butter and jelly plant, a Prison Industry Authority (PIA) program. (Doc. 1, Comp., court record p. 18.)  Plaintiff seeks monetary damages from PIA Supervisor T. Villagrana for reducing his pay in retaliation against him for filing a grievance against Officer Wajda, in violation of Plaintiff's rights under the First Amendment of the United States Constitution.

27
28

1    On April 29, 2013, Plaintiff filed a motion for summary judgment.  Fed. R. Civ. P. 56.

2   After obtaining two extensions of time, Defendant filed an opposition and a cross-motion for

3   summary judgment on June 11, 2013.  *Id.*  Following resolution of Plaintiff's Federal Rule of Civil

4   Procedure 56(d) motion, Plaintiff filed an opposition to Defendant's cross-motion on January 31,

5   2014, and the parties' motions for summary judgment have been submitted upon the record

6   without oral argument.[1]  Local Rule 230(*l*).

7    As discussed herein, the Court recommends that Plaintiff's motion be denied and

8   Defendant's cross-motion be granted on the ground that the reduction in Plaintiff's pay reasonably

9   advanced a legitimate correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir.

10  2005).

11  **II.    Legal Standard**

12   Any party may move for summary judgment, and the Court shall grant summary judgment

13  if the movant shows that there is no genuine dispute as to any material fact and the movant is

14  entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted);

15  *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position,

16  whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

17  parts of materials in the record, including but not limited to depositions, documents, declarations,

18  or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

19  genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.

20  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the

21  record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen*

22  *v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v.*

23  *Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

24   In resolving cross-motions for summary judgment, the Court must consider each party's

25  evidence.  *Johnson v. Poway Unified School Dist.*, 658 F.3d 954, 960 (9th Cir. 2011), *cert. denied*,

26

27  [1] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the
    requirements for opposing the motion.  *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154

28  F.3d 952, 960-61 (9th Cir. 1998).

1   132 S.Ct. 1807 (2012).  Plaintiff bears the burden of proof at trial, and to prevail on summary

2   judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than

3   for him.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Defendant does

4   not bear the burden of proof at trial and in moving for summary judgment, he need only prove an

5   absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Securities Litigation*, 627 F.3d

6   376, 387 (9th Cir. 2010).

7          In judging the evidence at the summary judgment stage, the Court does not make

8   credibility determinations or weigh conflicting evidence, *Soremekun*, 509 F.3d at 984 (quotation

9   marks and citation omitted), and it must draw all inferences in the light most favorable to the

10  nonmoving party and determine whether a genuine issue of material fact precludes entry of

11  judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942

12  (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012).

13  **III.    Discussion**

14         **A.    Summary of Plaintiff's Claim**[2]

15         In his complaint, Plaintiff alleges that on October 27, 2008, and October 28, 2008, security

16  staff would not let him go to work with his brush, beanie cap, and long john shirt.[3]  (Doc. 1,

17  Comp., p. 14.)

18         On October 27, 2008, Correctional Officer Wajda, a Facility-D PIA officer, authored a

19  CDC 128-A chrono against Plaintiff for refusal to work, and on October 30, 2008, Officer Wajda

20  authored a CDC 115 Rules Violation Report ("RVR") against Plaintiff based on Plaintiff's refusal

21  to perform work two days in a row.  (*Id.*, pp. 18-19.)

22         Plaintiff filed an appeal against Officers Wajda and Blank for disallowing him from going

23  to work wearing certain items of clothing and carrying his hair brush.[4]  (*Id.*, p. 14.)  Plaintiff

24  alleges that the brush presented no threat to security and it kept him groomed, and that the clothing

25

26  [2] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal
    knowledge of facts admissible in evidence.  *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004).

27
    [3] The terms long johns and thermals are used interchangeably.

28
    [4] The terms appeal and grievance are used interchangeably.

1    kept him warm.  (*Id.*)  Plaintiff alleges that he had a right to be well-groomed and warm, and he

2    will decide when he feels cold, not security staff.  (*Id.*)

3         The disciplinary hearing on the RVR was held on November 10, 2008.  (*Id.*, p. 32.)  The

4    hearing officer found that it was reasonable to believe the events occurred as reported, but because

5    Plaintiff never made it to his work assignment, he could not have refused to perform his assigned

6    duties as reported within the body of the RVR.  (*Id.*, p. 33.)  The hearing officer found that it was

7    in the interest of justice to dismiss the charge and he did so.  (*Id.*)  A "Dismissal Chrono"

8    documenting that Plaintiff was found not guilty and the charge was dismissed in the interest of

9    justice was authored by the hearing officer on November 10, 2008.  (*Id.*, p. 35.)

10         On November 10, 2008, Plaintiff returned to work and was told by Defendant Villagrana

11   that his pay would have been reduced if he had been found guilty of the RVR, but it would remain

12   the same because he was found not guilty.  (*Id.*, p. 12.)  On November 18, 2008, Plaintiff was

13   called to Defendant Villagrana's office and told that effective December 1, 2008, his pay was

14   going to be reduced.  (*Id.*, pp. 12, 14.)  Defendant Villagrana told Plaintiff that his pay was being

15   reduced because his refusal to go to work those two days affected the shop's production.  (*Id.*, p.

16   14.)  Defendant Villagrana asked Plaintiff to withdraw his appeal against Officer Wajda, but

17   Plaintiff refused.  (*Id.*, p. 5.)  Plaintiff alleges that because he was found not guilty of the RVR

18   violation and he did not receive a CDC-128-B chrono, it was impermissible for Defendant

19   Villagrana to reduce his pay, and that Defendant Villagrana reduced his pay to retaliate against

20   him for filing a grievance against Officer Wajda.  (*Id.*, pp. 5, 14.)

21         On December 1, 2008, Plaintiff filed a grievance against Defendant Villagrana for

22   reducing his pay.  (*Id.*, p. 12.)  Plaintiff's appeal was denied at the informal level of review based

23   on the findings that Defendant Villagrana acted within the scope of his duties and that Plaintiff's

24   pay was reduced because he was subject to disciplinary action via the 128-B chrono.  (*Id.*, p. 26.)

25   The appeal was thereafter denied at all levels of review.  (*Id.*, pp. 12-13, 36-37, 39-40.)

26   ///

27

28

4

**B.     Parties' Positions**[5]

**1.     Plaintiff's Statement of Facts**[6,7]

1.     The DOM (Department Operations Manual) governs increases and reductions in inmate pay.[8]

2.     A CDC 128-A form is a custodial counseling chrono.

3.     Plaintiff's pay was reduced because an RVR and a counseling chrono had been issued to him for refusing to work.[9]

4.     Plaintiff was found not guilty of the RVR charge "refusing to report to work," and the charge was dismissed in the interest of justice.[10]

5.     Either the willful refusal or the failure to report to work as directed is cause for pay reduction, and it may be documented on a CDC 128-B general chrono.[11]

6.     A CDC 115 (RVR) or a CDC 128-B may be used to document cause for a pay reduction.

7.     Plaintiff was restricted from going to work from October 28, 2008, to November 10, 2008.[12]

---

[5] Facts which are immaterial to resolution of the parties' motions for summary judgment, unsupported by admissible evidence, and/or redundant are omitted.  This section summarizes the parties' respective positions and is not a statement of undisputed facts.

[6] Plaintiff's motion for summary judgment is signed under penalty of perjury.  Therefore, the Court treats it as a declaration in so far as it sets forth facts which are based on Plaintiff's personal knowledge of facts admissible in evidence.  *Jones*, 393 F.3d at 922-23.

[7] Defendant's objections to Plaintiff's prison records for lack of authentication are overruled.  Fed. R. Evid. 901(b)(4); *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532-33 (9th Cir. 2011); *see also Chamberlain v. Les Schwab Tire Center of California, Inc.*, No. 2:11-cv-03105-JAM-DAD, 2012 WL 6020103, at *2 (E.D. Cal. Dec. 3, 2012) (citing *Burch v. Regents of Univ. of California*, 433 F.Supp.2d 1110, 1120 (E.D. Cal. 2006)) (rejecting "purely procedural" authentication objection).  Furthermore, prison records are excepted from the hearsay rule, Fed. R. Evid. 803(b)(6), and a party's statements offered against him by the opposing party are not hearsay, Fed. R. Civ. P. 801(d)(2)(A).

[8] DOM § 51121.10.

[9] Informal level response to inmate appeal, Doc. 1, Comp., court record p. 26.

[10] Comp., court record p. 35.

[11] Comp., p. 26.

[12] The documents cited by Plaintiff do not speak for themselves regarding a work restriction due to a pending RVR.  Specifically, the Court lacks any information on the meaning of the various letters under "Type of Time." (Doc. 25, Opp. to MTD, pp. 10-11.)  However, Defendant submitted Plaintiff's deposition testimony in support this fact, and there exists no dispute between the parties that Plaintiff was restricted from working pending resolution of the RVR, which occurred on November 10, 2008.

1   8.      Defendant documented that Plaintiff refused to work.[13]

2   9.      In responding to Plaintiff's inmate appeal at the informal level of review, T. Dunn and R.

3   Roehlk mis-cited to section 3041.3(f)(1) rather than to section 3041.2(f)(1) of the California Code

4   of Regulations, Title 15.[14]

5   10.     T. Dunn and R. Roehlk did not provide Plaintiff with a copy of a CDC 128-B chrono.

6   11.     On March 16, 2009, Warden Ken Clark issued the second-level decision denying

7   Plaintiff's appeal and in the decision, he cited to DOM 51121.10 as the governing regulation.

8   12.     Warden Clark also documented that Plaintiff received a CDC 128-B on October 27, 2008.

9   13.     Warden Clark did not provide Plaintiff with a copy of a CDC 128-B chrono.

10   14.    After the hearing officer found Plaintiff not guilty of the RVR on November 10, 2008, he

11   was permitted to return to work.

12   15.    Plaintiff was paid $0.65 per hour for the work he did from November 10, 2008, to

13   November 30, 2008.

14   16.    Plaintiff's pay was reduced to $0.40 per hour on December 1, 2008.

15   17.    Plaintiff was paid $0.40 per hour from December 1, 2008, to February 28, 2009.

16   18.    In March 2009, Plaintiff was paid $0.45 per hour.

17   19.    On May 29, 2009, Plaintiff's appeal was denied at the Director's Level of review.

18   20.    The appeal decision stated that a CDC 128-B was issued.

19   21.    The appeal decision was not accompanied by a copy of a CDC 128-B.

20   22.    Inmates assigned to work in the PIA have to go through the "Work Change."

21   23.    On October 27, 2008, Plaintiff showed up at the Work Change prepared to perform his

22   duties in the PIA.[15]

23

24

25   [13] Comp., p. 39.

[14] Comp., p. 26.  Section 3041.2(f)(1) provides that when an inmate's pay is reduced for misconduct, including willful
26   refusal to work or failure to work as directed, it shall be documented in the inmate's central file in according with
     sections 3314 and 3315.  Sections 3314 and 3315 pertain to administrative and serious rules violations (CDC 115).

27
     [15] Although Defendant purports to dispute this fact, there is no dispute that Plaintiff showed up at the Work Change to
28   pass through and begin his work assignment.

1  24.    On October 28, 2008, Plaintiff showed up at the Work Change prepared to perform his

2  duties in the PIA.

3  25.    On October 29, 2008, Plaintiff showed up at the Work Change prepared to perform his

4  duties in the PIA.

5  26.    Plaintiff was not permitted to pass through the Work Change to get to his work assignment

6  on October 27, 2008, October 28, 2008, or October 29, 2008.

7  27.    On October 30, 2008, Officer Wajda authored an RVR charging Plaintiff with refusal to

8  perform work, and he requested that Plaintiff be referred to the Unit Classification Committee for

9  "unassignment from PIA."[16]

10  28.    Plaintiff remained assigned to the peanut butter and jelly plant because his supervisor felt

11  he was useful.[17]

12  29.    Plaintiff filed an inmate appeal against Officer Wajda and Officer Blanks, complaining that

13  they did not allow him to go to work because he had his "military brush" with him and he was

14  wearing his beanie cap and long johns.[18]

15  30.    On November 19, 2008, Sergeant Curtiss interviewed Plaintiff at the first level of review

16  concerning for his inmate appeal against Officers Wajda and Blanks.

17  31.    "Unless an inmate charged with serious misconduct requires temporary administrative

18  segregation pursuant to section 3335(b) pending adjudication of the disciplinary charges, the

19  inmate may be retained in regularly assigned housing, work, and program assignments."   Cal.

20  Code Reg., Title 15, § 3312(a)(3)(A).

21  32.    Defendant made notes on the bottoms of CDC 1697 "Inmate Work/Supervisor's Time

22  Log" forms.

23  33.    Defendant prepared a CDC 101 "Work Supervisor's Report" form, dated November 1,

24  2008.

25  34.    Defendant and Plaintiff signed the CDC 101 form on the same day.

---

[16] Comp., p. 31.

[17] Comp., p. 26.

[18] Doc. 53, Motion, Ex. 2, pp. 20-22.

7

1   35.    Plaintiff was not at work on November 1, 2008, and he did not sign the CDC-101 form on

2   November 1, 2008.

3   36.    Plaintiff signed the form on November 19, 2008.

4   37.    The quality and quantity of Plaintiff's work was never graded as less than satisfactory or

5   average on any CDC 101 form, and sometimes Plaintiff received an above average grade.

6   38.    Plaintiff never received a copy of a CDC 128-B form for the incident at issue, and prison

7   staff members Rocha and Gibbs were not able to locate a CDC 128-B form for the incident at

8   issue.[19]

9                    **2.    Defendant's Statement of Facts**[20]

10  1.     At the time of the events in question, Plaintiff was lawfully in the custody of the California

11  Department of Corrections and Rehabilitation (CDCR).

12  2.     During 2008, Plaintiff was incarcerated at SATF.

13  3.     SATF has a vocational program to provide work experience and education for inmates, and

14  to provide key services to enable the institution to remain self-sufficient.  The vocational program

15  includes the PIA's food and beverage plant.  One of the factories in the food and beverage plant is

16  the peanut butter and jelly factory, where peanut butter and jelly are mixed and packaged.

17  4.     Defendant is employed as an Industrial Supervisor in the food and beverage plant at SATF.

18  His duties include planning and supervising the production and packaging of food products;

19  coordinating and supervising the installation, operation, maintenance and repair of equipment and

20  machinery; increasing production, efficiency, and product quality; and maintaining the safety and

21  security of work areas and materials.  He is also required to train and supervise inmate workers in

22  the peanut butter and jelly factory by evaluating their performance and making recommendations

23  for the appropriate staffing of the plant.

24

---

25  [19] Comp., pp. 44, 50.

26  [20] Plaintiff's objections to the declarations of Officer Wajda and Lieutenant Curtiss have no merit.  (Doc. 61.)
    Plaintiff may not seek to have declarations stricken based on purported conflicts of interest, to penalize the declarant
27  because of injustices as perceived by Plaintiff, etc.  (*Id.*)  Declarants are entitled to attest to matters which are within
    their personal knowledge, and Plaintiff has identified no legitimate legal objection to the declarations.  Fed. R. Civ. P.
28  56(c)(4); *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012).

1    5.      As an Industrial Supervisor for the PIA, Defendant is not a sworn peace officer.  Although

2    his duties include maintaining the safety and security of the workplace, preventing escape or

3    injury, and preserving state property, his focus is primarily on achieving safe, efficient, and

4    productive factory operation.  There are correctional officers assigned to the PIA plant who are

5    primarily responsible for custodial operations and security.

6    6.      Plaintiff was assigned as a hand packager at the peanut butter and jelly factory at SATF

7    between February 2006 and April 2009.

8    7.      Defendant was Plaintiff's supervisor in the peanut butter and jelly factory.

9    8.      Correctional Lieutenant K. Curtiss was a Vocational Sergeant at SATF in 2008.  He was

10   responsible for supervising the custody staff assigned to the vocational area, and ensuring the safe

11   and efficient operation of the vocational program area of the prison.

12   9.      The vocational area of SATF presents the greatest risk of custodial danger to inmates and

13   staff of any area in the prison because inmates and staff are required to have access to heavy

14   machinery, flammable liquids, electronics, caustic chemicals, and sharp metal tools.   The

15   vocational area of the prison contains factories, auto shops, electronic workshops, and other

16   facilities.   Inmates and staff require access to tools and equipment to complete the work.

17   Unfortunately, there is always the potential that some inmate or inmates may misuse this

18   equipment to cause injury to others.

19   10.     Because of this potential for harm and injury, the vocational area of SATF is subject to

20   stringent security protocols.  These protocols are memorialized in Operational Procedure ("OP")

21   116.

22   11.     One of the critical security measures adopted in OP 116 is the careful processing of

23   inmates into and out of the vocational area of the prison to ensure that potentially dangerous items

24   are not passed back and forth between the vocational area and the rest of the prison.  To reduce

25   this potential, the vocational area is separated from the rest of the prison by a checkpoint referred

26   to as the Work Change.  In order to pass through the Work Change, inmates must have a special

27   pass and they must undergo security screening, including body searches.

28

1    12.     In order to facilitate efficient and effective searches in the Work Change, and to reduce the

2    potential for smuggling contraband items through the Work Change, inmates are required to wear

3    only state-issued clothing, and they are limited in the ability to bring personal items through the

4    Work Change.     Permitted personal items include religious medallions, a wedding band,

5    prescription glasses, and a comb.  Brushes are not permitted.  Thermal underwear (long johns) is

6    permitted between November and February only.

7    13.     Officer Wajda was assigned to work in the PIA at SATF during the fall of 2008.  He was

8    responsible for custodial operations and security.  He also assisted the custody staff in processing

9    inmates into the vocational area of the prison through the Work Change.

10   14.     On October 27, 2008, at approximately 9:45 a.m., Officer Palmer, who was in the Work

11   Change at SATF, contacted Officer Wajda by telephone to inform him that Plaintiff was visibly

12   angry after not being allowed through the Work Change with restricted personal items.

13   15.     On October 27, 2008, Plaintiff was attempting to bring a hairbrush with him through the

14   Work Change, and he was wearing thermal underwear.

15   16.     Officer Wajda told Plaintiff that his attendance was required at the PIA work assignment.

16   Officer Palmer relayed to Officer Wajda that Plaintiff stated, "I'm not going to work."

17   17.     As a result, Officer Wajda issued Plaintiff a CDC 128-A counseling chrono, dated October

18   27, 2008, recording Plaintiff's behavior.  He also informed Sergeant Curtiss and Defendant

19   Villagrana of the report.

20   18.     On October 28, 2008, at approximately 7:30 a.m., Officer Wajda observed Plaintiff

21   walking away from the Work Change.  When he inquired why Plaintiff was walking away from

22   work, Plaintiff replied, "They won't let me in with personal clothing."

23   19.     Plaintiff was wearing thermal underwear and carrying a brush on October 28, 2008.

24   20.     Officer Wajda asked Plaintiff if he was going to return to work after dropping off his

25   personal clothing, and he replied, "No."

26   21.     Officer Wajda authored a disciplinary infraction (RVR) reporting that Plaintiff refused to

27   work on October 28, 2008.

28

22.     Because of the pending hearing on the disciplinary charge, Plaintiff's clearance to pass through the Work Change was withdrawn until the hearing date.  As a result, Plaintiff did not attend his work assignment in the vocational area of the prison from October 27, 2008, until November 10, 2008.

23.     On November 10, 2009, the disciplinary charge was dismissed because the hearing officer believed Officer Wajda incorrectly cited Plaintiff for refusing to work instead of for refusing to comply with the Work Change safety regulations.

24.     Because the peanut butter and jelly factory was short one hand packager between October 27, 2008, and November 10, 2008, Defendant was required to reassign other inmates from their duties to cover Plaintiff's responsibilities.

25.     Plaintiff's failure to comply with OP 116, and the rules necessary to gain admittance to the peanut butter and jelly factory, adversely impacted production in the factory.

26.     Because of Plaintiff's adverse impact on the factory, Defendant reduced his pay by $0.25 cents, from $0.65 to $0.40 per hour.  This reduction took effect on the first day of the next pay period, which was December 1, 2008.

27.     Defendant informed Plaintiff of the pay reduction on the first day that Plaintiff returned to work, which was November 10, 2008.

28.     As a result of these events, Plaintiff filed a prison grievance, Log No. SATF-D-08-5623. In the grievance, Plaintiff challenged the authority of the Work Change staff to refuse him admittance to the PIA with a brush and long johns.

29.     Sergeant Curtiss interviewed Plaintiff on November 19, 2008, to investigate his grievance. Based on Curtiss's review of the grievance, and the regulations governing the Work Change clearance, he determined that the officers properly enforced the regulations and he denied Plaintiff's appeal.

30.     At no time did Sergeant Curtiss ask Plaintiff to withdraw his grievance or dissuade him from appealing the grievance to the next level.

31.     Sergeant Curtiss never requested or suggested that Defendant reduce Plaintiff's pay as a result of the grievance Plaintiff filed.

Case 1:09-cv-01897-AWI-SKO   Document 70   Filed 02/12/14   Page 12 of 20

32.     Defendant's office in the peanut butter and jelly factory is very small.  It would not reasonably accommodate four adult males.

33.     Defendant does not permit inmates to enter the office because it stores sensitive personnel documents.  Because he does not allow inmates in the office, he does not even permit the inmate workers to remove and empty the trash from the office.

34.     Defendant does not recall being present in an interview between Plaintiff, Sergeant Curtiss and Officer Wajda in his office in the peanut butter and jelly factory on November 19, 2008.

35.     Defendant does not believe that such an interview ever occurred because it if had occurred, he believes he would remember it.

36.     Defendant was not aware that Plaintiff filed a grievance about Officer Wajda until he was informed of this lawsuit and Plaintiff's allegation that he had retaliated against Plaintiff based on the grievance.

37.     Because Defendant was not aware of the grievance, he did not ask Plaintiff to withdraw the grievance.

38.     Defendant's reason for reducing Plaintiff's pay was to impose a consequence on him for disrupting production at the peanut butter and jelly factory.  The purpose was to ensure that the pay rate in the factory accurately correlates with work performance and behavior.  By reducing pay rates for inferior performance, his intention was to dissuade other inmates from disrupting production.

39.     Plaintiff does not contend that Defendant stated that he would reduce Plaintiff's pay rate because Plaintiff filed or continued with a prison grievance.

    **C.      Findings**

         **1.      First Amendment Retaliation Claim**

    Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim.  *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic

12

1  elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

2  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

3  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

4  correctional goal." *Rhodes*, 408 F.3d at 567-68; *accord Watison v. Carter*, 668 F.3d 1108, 1114-

5  15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

6        In this case, there is no question that a reduction in pay constitutes an adverse action, *see*

7  *Brodheim*, 584 F.3d at 1270 (the mere threat of harm can be sufficiently adverse to support a

8  retaliation claim), or that engagement in filing prison grievances is protected conduct, *Watison*,

9  668 F.3d at 1114-15; *Brodheim*, 584 F.3d at 1269. The critical inquires in this case relate to 1)

10  Defendant's motive in reducing Plaintiff's pay, and 2) the existence of a legitimate correctional

11  goal underlying the pay reduction.

12                     **2.**        **Motive in Reducing Plaintiff's Pay**

13        Plaintiff must show that his pursuit of his grievance against Officer Wajda was the

14  substantial or motivating factor in Defendant's decision to reduce his pay. *Brodheim*, 584 F.3d

15  1262, 1271 (9th Cir. 2009) (citing *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th

16  Cir. 1989)). In this Circuit, Plaintiff need "only put forth evidence of retaliatory motive that, taken

17  in the light most favorable to him, presents a genuine issue of material fact as to" Defendant's

18  motivation. *Brodheim*, 584 F.3d at 1271 (citing *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir.

19  2003)) (internal quotation marks omitted). This requires Plaintiff to offer either direct evidence of

20  retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity in

21  time between the protected conduct and the alleged retaliation, (2) expressed opposition to the

22  conduct, or (3) other evidence that the reasons proffered by Defendant for the adverse action were

23  false and pretextual. *McCollum v. California Department of Corrections and Rehabilitation*, 647

24  F.3d 870, 882 (9th Cir. 2011) (citing *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002))

25  (quotation marks omitted).

26        Defendant's position is that he reduced Plaintiff's pay because Plaintiff failed to comply

27  with the rules necessary to gain admittance to the peanut butter and jelly factory, which adversely

28  impacted production. (Villagrana Dec., ¶¶6, 7.) Defendant denies being present when Sergeant

1    Curtiss interviewed Plaintiff regarding his appeal against Officer Wajda, he denies asking Plaintiff

2    to withdraw his inmate appeal against Officer Wajda, and he denies knowing that Plaintiff filed an

3    inmate appeal against Officer Wajda until he learned of the lawsuit filed against him.  (*Id.*, ¶§12,

4    13.)

5         Plaintiff, however, attests that on November 10, 2008, which was his first day back to

6    work, Defendant told him that if he had been found guilty of the RVR, his pay would have been

7    reduced but since he was found not guilty, his pay would remain the same.  (Davis Depo., 53:14-

8    22.)  Plaintiff was subsequently interviewed by Sergeant Curtiss on November 19, 2008, regarding

9    his inmate appeal against Officer Wajda.[21]  (*Id.*, 49:2-50:14.)  Plaintiff contends that Defendant

10   was present during the appeal interview and that after the interview, Defendant called Plaintiff to

11   his office and requested that Plaintiff withdraw his appeal against Officer Wajda.  (Davis Depo.,

12   49:12-17 & 52:21-53:5; Comp., p. 5.)  After Plaintiff refused, Defendant told him that his pay was

13   going to be reduced from $0.65 per hour to $0.40 per hour.  (Davis Depo., 53:5-13.)

14        Based on the parties' competing versions of events, the Court finds that there exists a

15   material factual dispute regarding Defendant's motivation in reducing Plaintiff's pay.

16   Accordingly, neither party is entitled to summary judgment on this element of Plaintiff's

17   retaliation claim.  The inquiry does not end with motive, however.

18        **3.    Existence of Legitimate Correctional Goal Underlying Pay Reduction**

19        Plaintiff must also demonstrate "that there were no legitimate correctional purposes

20   motivating the actions he complains of," *Pratt*, 65 F.3d at 808, and the Court must "'afford

21   appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate

22   penological reasons for conduct alleged to be retaliatory," *id.* at 807 (quoting *Sandin v. Conner*,

23   515 U.S. 472, 482, 115 S.Ct. 2293 (1995)).  In evaluating the existence of a legitimate correctional

24   goal, there must be a valid, rational connection between the rule, regulation, or action and the

25   legitimate, neutral governmental interest put forward to just it.  *Brodheim*, 584 F.3d at 1272-73

26   (citing *Shaw v. Murphy*, 532 U.S. 223, 228, 121 S.Ct. 1475 (2001)) (quotation marks omitted).  In

27

28   [21] In his complaint, Plaintiff alleges that Defendant asked him to withdraw his appeal against Officer Wajda on
     November 18, 2008.  The date discrepancy is not material to resolution of the parties' motions, however.

1   addition, courts should consider (1) the existence of alternate means of exercising the right

2   available to inmates; (2) the impact accommodation of the asserted constitutional right will have

3   on guards and other inmates, and on the allocation of prison resources generally; and (3) the

4   absence of ready alternatives available to the prison for achieving the governmental objectives. *Id.*

5   (citing *Shaw*, 532 U.S. at 228) (quotation marks omitted).

6                       **a.       Personal Items Permitted Through Work Change – OP 116**

7          In this case, the current version of SATF OP 116 which has been in effect since July 2008,

8   limits the personal items inmates are allowed to have in their possession when they are processed

9   through the Work Change.   (Curtiss Dec., ¶4, Attach. 2, court record p. 33.)   Relevant here,

10  inmates are only permitted to have a comb and they are only permitted to wear thermals between

11  November 1 and April 30.[22]  With the exception of jackets, thermal shirts, and thermal underwear

12  between November 1 through April 30, inmates are required to wear state-issued clothing only.

13         Plaintiff contends he was allowed to wear his personal thermals but he submits no

14  admissible evidence controverting the existence of OP 116, which prohibits thermal underwear

15  prior to November 1.   Further, although Plaintiff contends that palm brushes are also allowed,

16  Plaintiff's brush was a military brush, not a palm brush.   As such, there is no legitimate dispute

17  that Plaintiff's attempts to pass through the Work Change with his military brush and thermals on

18  October 27, 2008, and October 28, 2008, violated OP 116.

19                       **b.       Pay Reduction – DOM 51121.10**

20         Plaintiff next argues that pursuant to DOM 51121.10, his pay could not be reduced because

21  he was neither issued a 128-B chrono nor found guilty of the RVR (CDC 115).[23]   Although

22  various prison records documented that Plaintiff was issued a 128-B chrono, the chrono authored

23

24

---

25  [22] Prior to July 2008, OP 116 permitted thermals only between November and February.  (Curtiss Dec., ¶4, Attach. 1, court record p. 22.)

26

27  [23] The Court agrees with Defendant's position that even if Plaintiff had shown that Defendant failed to comply with prison rules, summary judgment in Defendant's favor would not be necessarily precluded.  In this case, however, the Court does not find merit in Plaintiff's position that Defendant's action was out of compliance with the relevant prison

28  rules.

1   by Officer Wajda on October 27, 2008, was on a 128-A chrono form, which Plaintiff contends did

2   not suffice to support the reduction in his pay.

3          The Court does not find that Plaintiff's narrow interpretation of the DOM to be supported

4   by its plain language, however.[24]  The relevant portion provides:

5          An inmate's pay shall not be reduced nor will the inmate be removed from pay
       status except for cause, which shall be documented by a CDC Form 101 approved
6          by the factory Superintendent and Prison Industries Administrator/Manager.  When
       the cause is for misbehaviour, including wilful refusal or failure to work as
7          directed, the matter will be reported as a disciplinary offense on a CDC Form 115
       Rules Violation Report, or a CDC Form 128-B, General Chrono.  A finding of
8          guilty to the charge may be accepted as authority to reduce the inmate's pay rate to
       the lowest PIA pay number or remove the inmate from PIA pay status, without
9          regard for any other penalty imposed at the disciplinary hearing.  Such a rate
       reduction shall be taken within ten days of the disciplinary action.
10
    (Comp., p. 47.)
11
           The DOM permits pay reduction for "cause," which must be documented on a CDC 101
12
    form.   In Plaintiff's case, the relevant CDC 101 form documenting Plaintiff's pay reduction
13
    graded Plaintiff as "unsatisfactory" in "attitude toward supervisors" and "interest in assigned
14
    work."[25]  The CDC 101 form also referenced the CDC 128-A Plaintiff was issued after he tried to
15
    pass through the Work Change with prohibited items.[26]
16
           Next, the DOM provides that where the "cause" is misbehaviour, it is to be documented on
17
    a CDC 115 (RVR) or a CDCR 128-B.  (Comp., p. 47.)  In this case, Plaintiff's conduct was
18
    documented in a CDC 115 (RVR).  (*Id.*, pp. 31-34.)  While Plaintiff was found not guilty of the
19
    RVR charge "refusal to perform work," he was not cleared of misbehaviour, thereby eliminating
20
    the existence of any "cause" for a pay reduction.  (*Id.*)  Plaintiff was found not guilty because the
21
    hearing officer determined that since he never made it to his work assignment, he could not have
22
    refused to perform his assigned duties.  (*Id.*) In other words, as Defendant argues, Plaintiff was
23
    found not guilty because he was charged with the wrong offense, not because he lacked culpability
24

25   [24] Interpretation of the section begins with its plain language and if the text is clear, the court looks no further in
    determining the section's meaning.  *E.g.*, *K and N Engineering, Inc. v. Bulat*, 510 F.3d 1079, 1081 (9th Cir. 2007).
26
    [25] Comp., p. 27.
27
    [26] The CDC Form 101 identifies the form as a CDC 128 without reference to A or B, and the evidence shows that it
28   was a CDC 128-A.

16

1  with respect to the events giving rise to the issuance of the RVR.  The senior hearing officer

2  counselled Plaintiff to follow all laws, rules, regulations, procedures, and verbal orders from staff,

3  and Plaintiff was reprimanded regarding future behavioural expectations.  (*Id.*)   Indeed, the

4  hearing officer found it reasonable to believe the events occurred as reported by Officer Wajda.

5  (*Id.*)

6        The DOM next provides that a finding of guilt may be accepted as authority to reduce the

7  inmate's pay rate to the lowest PIA pay number or remove the inmate from PIA pay status; and

8  the rate reduction must be taken within ten days of the disciplinary action.[27]

9        The word "may" is permissive while the word "shall" is mandatory.  *Saucer v. U.S. Dep't*

10  *of Educ.*, 668 F.3d 644, 651 (9th Cir. 2012).  Thus, by its terms, the DOM requires that a pay

11  reduction be supported by "cause."  However, the DOM does not limit "cause" to "misbehaviour"

12  documented in a CDC 115 (RVR) or a CDC 128-B, nor does it contain language mandating that

13  any reduction in pay be supported by a finding of guilt on an RVR or the issuance of a CDC 128-

14  B, as Plaintiff argues.

15        Officer Wajda perceived Plaintiff's behaviour as warranting a CDC 115, which was issued,

16  but the determination that Plaintiff was not guilty of the charge selected by Officer Wajda did not

17  preclude Defendant from reducing Plaintiff's pay.  Even the most severe pay reduction actions –

18  reduction of pay to the lowest PIA grade or removal from PIA pay status – do not require that an

19  inmate be found guilty of a CDC 115.  Rather, a finding of guilt *may* be accepted as authority for

20  the reduction.   Under the applicable DOM section, Plaintiff's pay reduction must have been

21  supported by "cause," and here, the documented causes of Plaintiff's pay reduction were the

22  underlying events which occurred on October 27, 2008, and October 28, 2008: Plaintiff's failure

23  to report to his job site following his unsuccessful attempts to be processed through the Work

24  Change with impermissible personal items, in violation of OP 116.

25  ///

26  ///

27

[27] Under Plaintiff's version of events, the action was taken on November 19, 2008, which was within ten days of the
28  November 10, 2008, disciplinary hearing.

17

1

### c.      Findings

2       Having addressed whether the actions taken against Plaintiff were supported by prison

3   rules and having determined that they were, the Court turns to the critical inquiry: whether there

4   was a valid, rational connection between the action taken against Plaintiff and the governmental

5   interest put forward to just that action.  *Brodheim*, 584 F.3d at 1272-73.

6       Institutional safety and security are unquestionably legitimate correctional goals and as an

7   inmate, Plaintiff is not entitled to determine which rules or orders he will and will not follow.[28]

8   *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011); *see also Griffin v. Gomez*,

9   __ F.3d __, __, 2014 WL 292528, at *__ (9th Cir. Jan. 28, 2014).  Neither Plaintiff's disagreement

10  with the determinations made on October 27, 2008, and October 28, 2008, that he was not in

11  compliance with OP 116 nor his belief that the determinations were unfair suffice to create a

12  triable issue of fact.

13      The rules governing what personal items inmates are entitled to possess when they pass

14  through the Work Change to PIA jobs is tied directly to prison officials' interest in maintaining the

15  safety and security of the prison.  Inmate workers, by virtue of their engagement in vocational

16  work, have greater access to materials and tools which may be misused, and the vocational area

17  where Plaintiff was working presents the greatest in-prison risk of danger to inmates and staff.  To

18  facilitate efficient and effective searches in the Work Change, and to reduce the potential for

19  smuggling contraband items through the Work Change, inmates entering the vocational area

20  through the Work Change are subject to more stringent security measures as a result and OP 116

21  limits the allowable personal items brought through the Work Change.  By virtue of their

22  imprisonment, inmates have demonstrated a disregard for societal rules.  Prison officials cannot

23  permit inmates to disobey those rules which are tied directly to preserving institutional safety and

24

25  ─────────────────────
[28] The evidence underscores Plaintiff's insubordinate attitude toward the rules.  Plaintiff took the positions that his
26  hair brush was not a threat to security and he had it with him to groom himself, in compliance with other regulations,
    and that it was his choice to stay groomed and warm, not prison officials' decision. (Comp., 14:12-16; Pl. Mtn., Ex. 2,
27  pp. 20, 22.)  However, as an inmate, Plaintiff was not in the position of determining that he was entitled to bring his
    hairbrush to his job because he has an interest in staying groomed and it was not a threat to security or that he was
28  entitled to wear thermals prior to November 1 if he was cold. (Comp., p. 14:12-16; Davis Depo., 30:4-835:9-13.)

1  security such as OP 116, or permit to them pick and choose which rules they will follow.  Such a

2  freedom of choice is simply not compatible with incarceration.

3       With respect to pay reduction, prison officials charged with managing inmates in the PIA's

4  high-risk vocational areas must be permitted the discretion to reward or discipline inmates based

5  on their work habits, which includes their productivity, their compliance with supervisors'

6  directives, and their ability to get along with staff and fellow inmate workers.  The ability to

7  increase pay as a reward or reduce pay as a disciplinary measure is directly related a supervisor's

8  obligation and responsibility to manage workers and work flow, as is the case in the free world.

9  The discretion to reduce an inmate worker's pay as a disciplinary measure is without question

10  rationally related to a supervisor's responsibility to manage inmate workers and their work flow.

11       Plaintiff received two write-ups regarding his failure to comply with OP 116 and these

12  write-ups provided cause for the reduction in his pay.  The connection between the disciplinary

13  measure taken against Plaintiff and his failure to comply with the applicable rules is neither

14  arbitrary nor irrational.  *Brodheim*, 584 F.3d at 1272-73 (citing *Shaw*, 532 U.S. at 228) (quotation

15  marks omitted).  To the contrary, there was a valid, rational connection between actions taken

16  against Plaintiff and the preservation of institutional safety and security.  *Id.*

17       The other factors similarly fail to tilt in Plaintiff's favor.  *Id.*  The rules at issue are in place

18  to maintain the safety and security of staff and inmates in an environment that must be strictly

19  controlled.  Allowing any inmate freedom in terms of what personal items he brings through the

20  Work Change and/or what rules he follows directly conflicts with the need to ensure the safety and

21  security of the institution.  Likewise, stripping a supervisor of the discretion to reward, discipline,

22  or otherwise manage his inmate workers jeopardizes the safety and security of the vocational trade

23  area, and it weakens the supervisor's ability to effectively manage his workers by encouraging

24  productivity and cooperation and discouraging negative behavior, including insubordination, low

25  productivity, etc.

26       Accordingly, the Court finds that Plaintiff has failed to demonstrate the absence of a

27  legitimate correctional goal underlying the reduction in his pay.  The pay reduction clearly

28  advanced the legitimate correctional goals of preserving institutional safety and security in the PIA

1   area of the prison and of managing an inmate workforce.  As a result, Defendant is entitled to

2   judgment on Plaintiff's claim against him.[29]

3   **V.      Conclusion and Recommendation**

4           For the reasons set forth above, the Court HEREBY RECOMMENDS that:

5           1.       Plaintiff's motion for summary judgment, filed on April 29, 2013, be DENIED; and

6           2.       Defendant's motion for summary judgment, filed on June 11, 2013, be GRANTED,

7   thus concluding this action in its entirety.

8           These Findings and Recommendations will be submitted to the United States District

9   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

10  **twenty (20) days** after being served with these Findings and Recommendations, the parties may

11  file written objections with the Court.  Local Rule 304(b).  The document should be captioned

12  "Objections to Magistrate Judge's Findings and Recommendations."   Any response to the

13  objections must be filed within **five (5) days** from the date of service of the objections.  Local

14  Rule 304(d).  The parties are advised that failure to file objections within the specified time may

15  waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

16  1991).

17

18

19  IT IS SO ORDERED.

20      Dated:    **February 12, 2014**                      **/s/ Sheila K. Oberto**
                                                             UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28  [29] Based on this finding, the Court does not reach Defendant's alternative argument that he is entitled to qualified immunity.

20